UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MERNA VAN, JAMES HOLCOMBE JR., and KAREN SWIETON, Plaintiffs | ) ) ) | C.A. No. 17-11418-MLW |
| v. | ) | |
| AMERICAN AIRLINES, INC., Defendant. | ) ) ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                        March 30, 2018

I.   INTRODUCTION

Plaintiffs, retired flight attendants, bring this action against their former employer, defendant American Airlines, Inc. ("American"), for eliminating one of their retirement benefits. They allege breach of contract, promissory estoppel, unjust enrichment, and fraudulent and negligent misrepresentation. They also seek a permanent injunction reinstating the benefit.

When plaintiffs retired, they were covered by collective bargaining agreements ("CBAs") that provided flight attendants who retired with 25 or more years of service, at age 45 or older, with free travel under the same priority boarding status as active employees (the "25/45 Benefit"). Plaintiffs qualified for this benefit. However, in 2014, after plaintiffs retired, American eliminated part of the 25/45 Benefit. As a result, plaintiffs no longer have the same priority boarding status as active employees.

Plaintiffs brought suit in Massachusetts state court, and American timely removed to this court on the basis of diversity jurisdiction. American now moves to dismiss, arguing that this court lacks subject matter jurisdiction because the Railway Labor Act ("RLA"), 45 U.S.C. §151 et seq., preempts plaintiffs' claims.

The RLA establishes mandatory procedures for resolving disputes between airlines and their employees. It categorizes disputes as "major" or "minor," and prescribes different procedures for each. In particular, the RLA vests exclusive jurisdiction over minor disputes with arbitration boards created by airlines and labor unions. A dispute is "minor" if its resolution requires interpretation of a CBA. Therefore, the RLA preempts any claim that requires interpretation of a CBA to resolve.

The court finds that plaintiffs' claims for breach of contract, promissory estoppel, and unjust enrichment require interpretation of CBAs. Therefore, the court is dismissing those claims. However, plaintiffs' claims for fraudulent and negligent misrepresentation do not depend on interpretation of CBAs. Therefore, the court is denying American's Motion to Dismiss with regard to those claims.

II.  LEGAL STANDARDS

A. <u>The Railway Labor Act ("RLA"), 45 U.S.C. §151 et seq.</u>

The RLA seeks to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 252 (1994). To do so, it establishes mandatory procedures for the resolution of labor disputes between common carriers and their employees, including airlines and flight attendants. <u>See</u> 45 U.S.C. §181 (extending RLA to "every common carrier by air engaged in interstate or foreign commerce"). However, the RLA's dispute resolution procedures differ for "major" versus "minor" disputes.

"Major" disputes relate to "the formation of collective agreements or efforts to secure them." <u>Elgin, J. & E. Ry. Co. v. Burley</u>, 325 U.S. 711, 723 (1945). "They arise where there is no such agreement or where it is sought to change the terms of one . . . ." <u>Id.</u> Accordingly, in major disputes "the issue is not whether an existing agreement controls the controversy." <u>Id.</u>

By contrast, "minor" disputes relate to "the meaning of an existing [CBA] in a particular fact situation, generally involving only one employee." <u>Bhd. R.R. Trainmen v. Chi. River & Ind. R.R. Co.</u>, 353 U.S. 30, 33 (1957). They "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." <u>Hawaiian Airlines</u>, 512 U.S. at 252-53 (quoting 45 U.S.C. §151a). Accordingly, in minor disputes

the issue is "the interpretation and application of the parties' CBA." de la Rosa Sanchez v. E. Airlines, Inc., 574 F.2d 29, 31 (1st Cir. 1978).

The RLA "requires air carriers and employees, acting through their representatives," to create "system boards of adjustment" to resolve minor disputes. Id. These boards have "exclusive primary jurisdiction" over such disputes. Pa. R.R. Co. v. Day, 360 U.S. 548, 550 (1959). "Thus, a determination that [plaintiffs'] complaints constitute a minor dispute would pre-empt [plaintiffs'] state-law actions." Hawaiian Airlines, 512 U.S. at 253.

To determine whether a particular dispute is major or minor, the court does not rely on the cause of action. See Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 323-24 (1972). Otherwise, plaintiffs could "make an end-run around the jurisdictional scope of RLA by the use of an ingeniously framed complaint alleging a tort." de la Rosa Sanchez, 574 F.2d at 32. The key question is whether resolution of the dispute "hinges upon" interpretation of the CBA. Adames v. Exec. Airlines, Inc., 258 F.3d 7, 11 (1st Cir. 2001). If so, the dispute is minor.

However, "claims requiring only consultation with the CBA, versus actual interpretation," are not preempted. Id. at 12. For example, the Supreme Court has stated that "purely factual questions about an employee's conduct or an employer's conduct and motives do not requir[e] a court to interpret any term of a [CBA]."

4

Hawaiian Airlines, 512 U.S. at 261 (internal quotation marks omitted). A claim is only preempted if it "is dependent on the interpretation of a CBA." Id. at 262.

    B. Subject Matter Jurisdiction

    "Once challenged, the party invoking subject matter jurisdiction [in this case plaintiffs] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (internal quotation marks omitted). "There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007).

    In a facial challenge, the movant argues that the pleadings do not sufficiently allege subject matter jurisdiction. See id. at 162 n.8 (citing 5C Wright & Miller, Federal Practice and Procedure, §1363, at 653-54 (1969)). Therefore, the court accepts allegations in the complaint as true and decides whether, if proven, they would establish jurisdiction. See id. at 162.

    In a factual challenge, the movant raises factual questions that "den[y] or controvert[] the pleader's allegations of jurisdiction." Id. at 162 n.8 (quoting citing 5C Wright & Miller, Federal Practice and Procedure, §1363, at 653-54 (1969)). Here, American raises a factual challenge. It denies plaintiffs' allegations of jurisdiction, and has submitted copies of CBAs and

arbitration board decisions as evidence. Plaintiffs have also submitted documents and affidavits. See, e.g., Dkt. No. 18.

The standard a court uses to evaluate a factual challenge to its jurisdiction depends on "whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Id. at 163. When "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." Id. (internal quotation marks omitted). However, when "the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim . . . the [] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (internal quotation marks omitted).

In this case, the jurisdictional issue and substantive claims are intertwined. If resolving plaintiffs' substantive claims requires interpretation of the CBAs, then plaintiffs' substantive claims are minor disputes over which this court lacks jurisdiction. Similarly, if resolving plaintiffs' substantive claims does not require interpretation of the CBAs, then plaintiffs' substantive claims are not minor disputes, and this court has jurisdiction. Accordingly, the court must assess American's Motion to Dismiss using the standard applicable to a motion for summary judgment.

Therefore, the court must allow American's Motion to Dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. at 163 (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). "If the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point." Id.

III.  FACTUAL BACKGROUND

Plaintiffs Merna Van, James Holcombe, and Karen Swieton are retired flight attendants. See Compl. ¶8 (Dkt. No. 12). Plaintiff Holcombe began employment as a flight attendant in 1980 with Piedmont, a predecessor of US Airways, which is itself a predecessor of American. See id. ¶57. In 2005, Holcombe considered retiring. See id. ¶58. At the time, he was covered by a CBA executed in January 2005 (the "2005 CBA"), which stated:

> A flight attendant who has completed twenty-five (25) years of service with the Company as a flight attendant and has attained the age of forty-five (45) and who leaves the Company shall be eligible for on-line passes in accordance with Company policy as if he/she were still in an active status. When a flight attendant under this Paragraph becomes eligible for and receives retirement benefits, he/she shall be eligible for other travel benefits that are effective under the retirement benefit program for flight attendants.

Ackerman Decl., Ex. A, §22.I.2, at 7 of 97 (Dkt. No. 15-2).

On September 7, 2005, US Airways told Holcombe that "flight attendants who voluntarily resign from [US Airways] with at least 25 years of seniority and who are at least 45 years of age enjoy lifetime travel under the [25/45] language of the contract." Compl. ¶64 (Dkt. No. 12). On November 2, 2005, Holcombe submitted a resignation letter, "in which he expressly referenced the lifetime right to travel with active status boarding priority . . . ." Id. ¶65.

Plaintiff Van began employment as a flight attendant in 1983 with USAir, a predecessor of American. See id. ¶24. In the spring of 2014, while on medical disability leave, Van considered retiring. See id. ¶¶25, 27. On May 13, 2014, Rick Carpenter, Director of In-Flight Planning for American, sent Van a letter listing "lifetime travel" as a retirement benefit, and stating that "flight attendants who retired with 25/45 status '. . . will receive SA3 (active) boarding priority as opposed to SA4 (inactive)[.]'" Id. ¶¶32-33 (emphasis in Complaint).

On May 19, 2014, Van received another letter listing "lifetime non-revenue space available travel" as a retirement benefit. Id. ¶35. After following up with Carpenter about her eligibility for active status boarding priority, Carpenter responded, "Don't worry about it as it's my department that makes the 25/45 happen." Id. ¶38 (emphasis in Complaint). Van retired on May 26, 2014. See id. ¶39.

Plaintiff Swieton began employment as a flight attendant in 1987 with Piedmont. See id. ¶42. In 2014, American announced a Voluntary Early Out Program ("VEOP"), under which employees could retire early in exchange for certain benefits. See id. ¶43. On February 7, 2014, Carpenter sent Swieton a letter stating that she was eligible under the VEOP for "retirement with 25/45." Id. ¶46-47.

On May 19, 2014, Carpenter sent Swieton another letter, listing "lifetime travel" as a retirement benefit, and stating that "flight attendants who retired with 25/45 status '. . . will receive SA3 (active) boarding priority as opposed to SA4 (inactive)[.]'" Id. ¶51 (emphasis in Complaint). On June 27, 2014, Swieton retired. See id. ¶53.

At the time they retired, plaintiffs Van and Swieton were covered by a CBA executed in February 2013 (the "2013 CBA"), which stated:

> A Flight Attendant who has completed twenty-five (25) years of service with the Company as a Flight Attendant and has attained the age of forty-five (45) and who leaves the Company shall be eligible for on-line passes in accordance with Company policy as if she/he were still in an active status. . . . When a Flight Attendant under this Paragraph becomes eligible for and receives retirement benefits, she/he shall be eligible for other travel benefits that are effective under the retirement benefits program for Flight Attendants.

Ackerman Decl., Ex. B, §26.G.3, at 38 of 117 (Dkt. No. 15-4).

In December 2013, US Airways and American Airlines merged, creating defendant American. See Compl. ¶8 (Dkt. No. 12). American initially stated that it would continue to provide active status boarding priority under the 25/45 Benefit to qualified retirees. See id. ¶18. However, in August 2014, American changed course and announced that it would no longer provide them active status boarding priority. See id. ¶20. In December 2014, American and the Association of Professional Flight Attendants entered into a new CBA (the "2014 CBA"). See Dkt. No. 15-5. The 2014 CBA did not include the 25/45 Benefit.

IV.  PROCEDURAL HISTORY

On August 6, 2014, the Association of Flight Attendants-CWA, the union that was party to the 2013 CBA, filed a grievance with the appropriate board of adjustment on behalf of retired flight attendants who qualified for the 25/45 Benefit. See Opinion & Award, In re US Airways, Inc. & Ass'n Flight Attendants-CWA, Gr. No. 2014-050-30-99-02 (Oct. 2015) (included in the record in Ackerman Decl., Ex. D (Dkt. No. 15-6)). The board adopted the following question:

> Did [American] violate Section 26.G.3 of the [2013 CBA] when it unilaterally denied active status boarding priority to all recipients of [the 25/45 Benefit] beginning in September 2014?

Id. at 3-4 of 31.

On October 22, 2015, the board held:

> The [25/45 Benefit] remained in place so long as the [CBA] which provided it remained in effect. However, the Union failed to prove that this benefit, contractually or otherwise, represented a lifetime benefit for eligible flight attendants . . . .
>
> Thus, . . . beginning on September 10, 2014, when the Company implemented changes to the travel policy that negatively affected the 25/45 benefit, it violated the 2013 Agreement . . . .
>
> Thus, . . . when the [2014 CBA] was implemented on December 13, 2014, the Company ceased to be in violation of the 2013 [CBA].

Id. at 28, 30 of 31.

The board later ordered that American provide "the entire population of 25/45 retirees" with active status boarding priority for a four-month period from June 1, 2016 through September 30, 2016. See Remedy Award, In re US Airways, Inc. & Ass'n Flight Attendants-CWA, Gr. No. 2014-050-30-99-02 (Jan. 2016) (included in the record in Ackerman Decl., Ex. I (Dkt. No. 15-11)).

On June 12, 2017, plaintiffs filed suit in Massachusetts Superior Court. See Compl., Dkt. No. 1, Van v. Am. Airlines, Inc., 1784CV01807 (Mass. Sup. Ct. June 12, 2017). The Complaint includes five counts. Count I alleges breach of contract. Count II alleges promissory estoppel. Count III alleges unjust enrichment. Count IV, brought only by Van and Swieton, alleges fraudulent misrepresentation. Count V, also brought only by Van and Swieton, alleges negligent misrepresentation.

American timely removed to this court. See Dkt. No. 1. It then moved to dismiss. See Dkt. No. 13. It argues that the RLA preempts plaintiffs' claims. More specifically, it argues that plaintiffs' claims depend on interpretation of the 2005 and 2013 CBAs and, therefore, are minor disputes over which this court lacks jurisdiction.

V. DISCUSSION

    A. The RLA Preempts Plaintiffs' Breach of Contract Claims (Count I).

In Count I, plaintiffs allege breach of contract. They do not allege that American breached the 2005 and 2013 CBAs. Rather, they allege that American's communications with plaintiffs prior to plaintiffs' retirements gave rise to "side agreements," in which American promised plaintiffs active status boarding priority for life. Opp'n Mot. Dismiss at 9 (Dkt. No. 17). American purportedly breached those agreements when it discontinued plaintiffs' active status boarding priority.

To prevail on their claims for breach of contract, plaintiffs must show that: (a) "there was an agreement between the parties"; (b) "the agreement was supported by consideration"; (c) "plaintiff[s] [were] ready, willing, and able to perform . . . the contract"; (d) American "committed a breach of the contract"; and

(e) "plaintiff[s] suffered harm as a result."[1] Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Furthermore, under the RLA, any "contract with an individual employee, which in any manner would expand, supersede or modify the [CBA], would not be valid nor enforceable." Trigo v. E. Air Lines, Inc., 440 F. Supp. 983, 984 (D.P.R. 1976); see also Zumbrun v. Delta Airlines, Inc., CV95-4787 MRP, 1996 WL 652718, *5 (C.D. Cal. June 24, 1996) ("Inconsistent 'contracts' with individual employees who are covered by a [CBA] are void and unenforceable.") (citing Order R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 346-47 (1944)). As the Supreme Court explained in Railroad Telegraphers, if individual agreements could supersede CBAs, then "statutes requiring collective bargaining would have little substance, for what was made collectively could be promptly unmade individually." 321 U.S. at 346.

In this case, the 2005 and 2013 CBAs must be interpreted to determine whether the "side agreements" are valid and enforceable.

---

[1] As a threshold matter, the parties have not conducted a choice-of-law analysis. However, they consistently cite to Massachusetts law for the elements of plaintiffs' state law claims. Accordingly, the court is applying Massachusetts law. See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("The parties, sometimes explicitly, other times through the natural implication of their asseverations, have achieved a satisfactory consensus on the critical choice-of-law issues."); see also Hershey v. Donaldson, Lufkin & Jenrette Secs. Corp., 317 F.3d 16, 20 (1st Cir. 2003).

As described earlier, the CBAs state that qualifying retired flight attendants receive active status boarding priority passes "in accordance with Company policy." 2005 CBA §22.I.2, at 7 of 97 (Dkt. No. 15-2); 2013 CBA §26.G.3, at 38 of 117 (Dkt. No. 15-4). However, the CBAs do not explicitly state whether qualifying retired flight attendants are entitle to the 25/45 Benefit for life or for the length of the CBA, or whether American, by changing its "Company polices," can effectively eliminate the 25/45 Benefit. If indeed the CBAs only entitled qualifying retired flight attendants to the 25/45 Benefit for some period of time less than life--as the board of adjustment found with regard to the 2013 CBA--American's "side agreements" would conflict with the CBAs. That is, the CBAs promise one thing and the side agreements promise another. Under those circumstances, the "side agreements" would not be valid. Therefore, plaintiffs' breach of contract claims depend on interpretation of the CBAs..

Edelman v. Western Airlines, Inc., 892 F.2d 839 (9th Cir. 1989), is instructive. In that case, a retired flight attendant sued her former employer, Western Airlines ("Western") for breach of contract after Western terminated her for alleged theft. See id. at 844. Plaintiff argued that Western breached an implied contract based on, among other things, "personnel policies and procedures governing the employment relationship." Id. The court found that the RLA preempted plaintiff's claims. It reasoned that

14

if Western's policies and procedures were "inconsistent with the provisions of the [CBA], the bargaining agreement controls" and, therefore, plaintiff's claim was "inextricably intertwined with the [CBA] . . . ." Id. (internal quotation marks and citations omitted).

Plaintiffs attempt to circumvent Railroad Telegraphers and Edelman by arguing that the "side agreements" contain "promises of additional benefits outside of the CBA[s]," rather than benefits that conflict with the CBAs. Opp'n Mot. Dismiss at 9 (Dkt. No. 17) (emphasis added). In support, they cite Rabé v. United Air Lines, Inc., 636 F.3d 866 (7th Cir. 2011). In that case, plaintiff flight attendant signed an individual employment agreement with United Air Lines ("United") stating that "the terms and conditions" of her employment would "be governed exclusively by applicable United States law . . . and the [applicable CBA] . . . ." Id. at 868. United later terminated plaintiff "for allegedly misusing company-issued travel vouchers," provided pursuant to the CBA.[2] Id. at 869. Believing that United's stated reason was a pretext, plaintiff sued for wrongful termination, alleging discrimination on the basis of age and sexual orientation. See id. United argued that plaintiff's allegations were minor disputes. It reasoned that

---

[2] The district court's decision on remand contains a more detailed description of the CBA. See Rabé v. United Air Lines, Inc., 971 F. Supp. 2d 807, 812-14 (N.D. Ill. 2013).

because the CBA contained terms regarding the travel voucher program, plaintiff's claims were "founded upon United's alleged violation of the terms of the [CBA] that governed [plaintiff's] employment." See id. at 872.

The court held, however, that the RLA did not preempt plaintiff's claims because plaintiff was "assert[ing] rights that are independent of the [CBA]." Id. at 873. More specifically, plaintiff's rights "ar[o]se from her individual employment contract                with                United, . . . in which United and she agreed that their relationship should be governed by United States law, including . . . federal employment discrimination laws." Id. The court acknowledged that plaintiff's claims implicated a policy contained in the CBA, but concluded that the claims "[did] not call the policy itself into dispute." Id. Therefore, interpretation of the CBA was unnecessary. Plaintiff's claims depended on whether United's "subjective reasons for terminating [her] employment" were lawful under anti-discrimination laws, not whether United violated any terms of the CBA. Id.

Unlike Rabé, the "side agreements" and CBAs in this case involve potentially conflicting promises. In Rabé, United did not allege that its individual employment agreement conflicted with any provisions in the CBA. For example, it did not allege that the CBA contained a different choice of law provision. Here, however,

the "side agreements" and CBAs may provide conflicting timeframes for the 25/45 Benefit. The question is not American's subjective motivation, but rather what the 2005 and 2013 CBAs mean. Therefore, plaintiffs' breach of contract claims are minor disputes over which this court lacks jurisdiction.[3]

B. The RLA Preempts Plaintiffs' Promissory Estoppel Claims (Count II).

In Count II, plaintiffs allege promissory estoppel. They argue that if American's communications did not create enforceable "side agreements," the communications at least reasonably induced plaintiffs' detrimental reliance. Plaintiffs maintain that they retired because they believed they were entitled to active status priority boarding for life.

To prevail on their claims for promissory estoppel, plaintiffs must show that: (a) American "made a promise which [it] should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise"; (b) "the promise . . . induce[d] such action or forbearance"; and

---

[3] Plaintiffs also point out that American has entered into "side agreements" with other employees regarding priority travel privileges. Opp'n Mot. Dismiss at 7, 9 (Dkt. No. 17). They argue this is "evidence that [American] could, and did, make side agreements with individuals concerning travel benefits on retirement outside of the CBA." Id. at 9. However, this argument is irrelevant. Even assuming such other "side agreements" exist, they do not resolve the question of whether the "side agreements" with plaintiffs conflict with the CBAs.

(c) "injustice can be avoided only by enforcement of the promise." Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 82 (D. Mass. 2004).

The Massachusetts Supreme Judicial Court has also explained that "[w]hen a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration." R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995). That is, "an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration." Id. (discussing Loranger Constr. Corp. v. E.F. Hauserman Co., 384 N.E.2d 176 (Mass. 1978)).

Assuming that plaintiffs relied on American's promises of lifetime active status boarding priority, plaintiffs' promissory estoppel claims present the same issue as the breach of contract claims. The promise would not be enforceable to the extent it conflicts with the CBAs. Therefore, the CBAs must be interpreted in order to resolve plaintiffs' promissory estoppel claims. Accordingly, plaintiffs' promissory estoppel claims are minor disputes, and this court lacks jurisdiction over them.

C. <u>The RLA Preempts Plaintiffs' Unjust Enrichment Claim (Count III).</u>

In Count III, the plaintiffs allege unjust enrichment. They argue that American "received a benefit from the decision of each of the Plaintiffs to retire or resign before reaching retirement age, as their departure enabled Defendant to fill their positions with employees at a lower pay scale." Compl. ¶78 (Dkt. No. 12). Accordingly, "[b]y failing to honor the promises that induced the Plaintiffs to retire or resign before retirement age, [American] has imposed a detriment on the Plaintiffs while continuing to reap the financial benefits of its actions." <u>Id.</u> ¶79.

To prevail on their claims for unjust enrichment, plaintiffs must show that: (a) American "received a benefit"; and (b) "the benefit was unjust, a quality that turns on the reasonable expectation of the parties." <u>Metro. Life Ins. Co. v. Cotter</u>, 984 N.E.2d 835, 850 (2013) (internal quotation marks omitted). Moreover, plaintiffs are "not entitled to recovery on a theory of unjust enrichment where a valid contract defines the obligations of the parties." <u>Malden Police Patrolman's Ass'n v. Malden</u>, 82 N.E.3d 1055, 1063 (Mass. App. Ct. 2017); <u>see also</u> <u>York v. Zurich Scudder Invs., Inc.</u>, 849 N.E.2d 892, 901 (Mass. App. Ct. 2006) ("It is well settled that quantum meruit relief may not be granted where an express contract covering the matter exists.").

Assuming that American received a benefit from plaintiffs' retirement, resolution of plaintiffs' unjust enrichment claims depends on interpretation of the CBAs. The CBAs must be interpreted to determine whether they define American's obligations. If the 2005 and 2013 CBAs allow American to discontinue the 25/45 Benefit in accordance with "Company policies," American cannot have been unjustly enriched by discontinuing the 25/45 Benefit in accordance with Company policies.

This case is analogous to Bloemer v. Northwest Airlines, Inc., 03-4183, 2003 WL 22508505 (D. Minn. Nov. 4, 2003), aff'd, 401 F.3d 935 (8th Cir. 2005). In Bloemer, retired pilots sued their former employer, Northwest Airlines ("Northwest"), for unjust enrichment. A predecessor to Northwest entered into a group annuity contract with a mutual insurance company for the pilots' benefit. See id. at *1. The predecessor (and later Northwest) received membership interest in the mutual insurance company. See id. When the mutual insurance company converted into a stock company, it exchanged Northwest's membership interest for stock. See id. The pilots argued that "because they are entitled to the proceeds of the annuities, and because their contributions were used to purchase the annuities, they are the rightful owners of the [stock] shares." Id.

The court held that the RLA preempted the pilots' unjust enrichment claim. It observed that "zipper clauses" in CBAs stated

that the CBAs superseded any prior agreements--including the initial agreement between Northwest's predecessor and the pilots --and, therefore, "essentially extinguish[ed] pilots' rights to any funds received from [the mutual insurance company] aside from . . . annuity payments." Id. Accordingly, the court concluded that the CBAs "must be examined and interpreted in order to determine which party is entitled to the demutualization proceeds." Id. at *4.

Plaintiffs point out that absent from the CBAs in this case are "zipper clauses" like those in Bloemer. See Opp'n Mot. Dismiss at 15 (Dkt. No. 15). However, this argument misses the point of Bloemer. The court in Bloemer explained that the CBAs "go beyond a 'mere mentioning' of the annuity contract at issue," and might directly govern which party is entitled to the stock shares. 2003 WL 22508505 at *4. Therefore, the court concluded that "because [the CBAs'] must be interpreted at all, the RLA requires that this matter be argued before Systems Board of Adjustment." Id. Similarly, because the CBAs in this case go beyond merely mentioning the 25/45 Benefit, and might directly govern whether American could discontinue the 25/45 Benefit, plaintiffs' unjust enrichment claims must be argued before the appropriate board of adjustment.

D. The RLA does not Preempt Van and Swieton's Fraudulent Misrepresentation (Count IV) and Negligent Misrepresentation (Count V) Claims.

In counts IV and V, Van and Swieton allege fraudulent and negligent misrepresentation. In essence, they argue that American promised them active status boarding priority for life when American knew or should have known that it would soon discontinue that benefit.

To prevail on their fraudulent and negligent misrepresentation claims, plaintiffs must show, among other things, that American made a false representation of a material fact on which plaintiffs justifiably relied.[4] See, e.g., Masingill, 870 N.E.2d at 88; DeWolfe, 985 N.E.2d at 1192.

---

[4] To prevail on their claims for fraudulent misrepresentation, Van and Swieton must show that: (a) "[American] made a false representation of a material fact"; (b) "with knowledge of its falsity"; (c) "for the purpose of inducing [plaintiffs] to act thereon"; and (d) "that [plaintiffs] relied upon the representation as true and acted upon it to [their] damage." Masingill v. EMC Corp., 870 N.E.2d 81, 88 (Mass. 2007).

To prevail on their claims for negligent misrepresentation, Van and Swieton must show that: (a) American, "in the course of [its] business, or in a transaction in which [it] had a pecuniary interest"; (b) "supplied false information for the guidance of [plaintiffs]; (c) "in [plaintiffs'] business transactions"; (d) "causing and resulting in pecuniary loss to [plaintiffs]" (e) "by [plaintiffs'] justifiable reliance on the information"; and (f) American "failed to exercise reasonable care or competence in obtaining or communicating the information." DeWolfe v. Hingham Ctr., Ltd., 985 N.E.2d 1187, 1192 (Mass. 2013).

American argues that whether it falsely represented a material fact "turns on the parties' rights and obligations regarding travel privileges in the [CBAs] and whether they allow American to discontinue the 25/45 [Benefit]." Mem. Supp. Mot. Dismiss at 15 (Dkt. No. 14). It characterizes plaintiffs' claims as alleging that American represented the 2013 CBA as promising one thing when the CBA actually promised another. Accordingly, American cites cases involving allegations that defendants misrepresented the meaning of a CBA. See Mem. Supp. Mot. Dismiss at 15-16 (Dkt. No. 14). For example, in Melanson v. United Air Lines, Inc., 931 F.2d 558 (9th Cir. 1991), plaintiff alleged that United misrepresented weight requirements in the CBA. Accordingly, the court explained that plaintiff was required to "show that the relevant provisions of the CBA differ significantly from [United's] representations."[5] Id. at 563; see also Kollar v. United Transp. Union, 83 F.3d 124, 126 (5th Cir. 1996) ("To prove the falsity of the representations, Plaintiffs would have to show that the relevant seniority provisions of the CBA, the transfer agreement, and modifying letter agreement, differ from the representations made by the Union."); Allen v. United Transp.

---

[5] Furthermore, the Ninth Circuit has noted that Melanson relied on an overly broad definition of a "minor" dispute. See, e.g., Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416, 1420 (9th Cir. 1995).

Union, 964 F.2d 818, 821 (8th Cir. 1992) ("To prevail on their misrepresentation claim, the appellants must show that Amtrak and the union made false representations about the CBA's seniority provisions.").

However, American mischaracterizes plaintiffs' claims. As plaintiffs explain, they do not allege "that misrepresentations were made, fraudulently or negligently, about whether the union could renegotiate the 25/45 provision in future CBAs," but rather that "the representations were made to Ms. Swieton and Ms. Van about the nature of the travel privileges with knowledge that the company was going to change the nature of those travel privileges." Opp'n Mot. Dismiss at 16 (Dkt. No. 17) (emphasis in original). In other words, plaintiffs allege that American made misrepresentations "regarding its intentions with respect to [Van and Swieton's] lifetime travel benefits." Compl. ¶¶87, 94 (Dkt. No. 12).

This case is analogous to Ertle v. Continental Airlines, Inc., 136 F.3d 690 (10th Cir. 1998). In Ertle, plaintiffs, Denver-based flight attendants, alleged that their employer, Continental Airlines ("Continental"), offered them free flight passes to induce their early retirement. See id. at 692. Shortly after plaintiffs retired, Continental significantly reduced its flight service to and from Denver. See id. at 693. Plaintiffs sued for fraudulent concealment, arguing that Continental did not disclose

its plan to cut its Denver routes when it offered plaintiffs the
flight passes. See id.

Continental argued that the RLA preempted plaintiffs' claims.
It contended that "[b]ecause Plaintiffs' claims are based on
Continental's decision to reduce the number of flights to and from
Denver, Plaintiffs' claims necessarily involve interpretation of
the CBA, which gives sole authority to Continental to 'determine
and change the number, size and location of bases and facilities.'"
Id. at 694. The district court agreed, but the Tenth Circuit
reversed.

The Tenth Circuit reasoned that "[r]esolution of Plaintiffs'
claims depends not on interpretation of the CBA, but on a factual
determination of whether Plaintiffs can prove the elements
required to recover for fraudulent concealment," including whether
"Continental concealed a material existing fact that . . . should
have been disclosed." Id. at 694-95. The "fact" that Continental
allegedly concealed was not a provision of the CBA, but rather
Continental's decision to cut Denver service at the time it offered
free flight passes to Denver-based flight attendants.

In Massachusetts, a claim for misrepresentation can encompass
the failure to disclose a material fact. "Although there may be no
duty imposed upon one party to a transaction to speak for the
information of the other . . . if he does speak with reference to
a given point of information . . . he is bound to speak honestly

25

and to divulge all the material facts bearing upon the point that lie within his knowledge." Kannavos v. Annino, 247 N.E.2d 708, 711 (1969) (internal quotation marks omitted). Accordingly, "[f]ragmentary information may be as misleading . . . as active misrepresentation, and half-truths may be as actionable as whole lies." Golber v. BayBank Valley Trust Co., 704 N.E.2d 1191, 1193 (quoting Kannavos, 247 N.E.2d at 711-12).

Here, Van and Swieton allege that American failed to disclose its plan to discontinue active status boarding priority when it informed them of their retirement benefits. As in Ertle, American's alleged misrepresentation is not predicated on the CBA, but rather a factual determination of what American knew or should have known. Accordingly, the RLA does not preempt plaintiffs' claims for fraudulent and negligent misrepresentation.

VI.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Defendant's Motion to Dismiss (Docket No. 13) is ALLOWED with regard to Counts I, II, and III, and DENIED with regard to Counts IV and V.

2.   The parties shall, by April 22, 2019, confer and report whether they have resolved this case or request mediation.

3.   If the parties have not resolved this case or requested mediation, a scheduling conference will be held on April 30, 2019, at 4:00 p.m. Plaintiffs Van and Swieton and a representative of

American with full settlement authority (meaning he or she does not have to consult anyone else) shall attend.

UNITED STATES DISTRICT JUDGE